UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
BT HOLDINGS, LLC,

                              Plaintiff,

        -against-

VILLAGE OF CHESTER and VILLAGE OF
CHESTER BOARD OF TRUSTEES,

                              Defendants.
------------------------------------------------------------X

**OPINION AND ORDER**

15 Civ. 1986 (CS)(JCM)

      Before the Court is a motion by defendants Village of Chester ("Village") and Village of Chester Board of Trustees ("Village Board") (collectively, "Defendants") to disqualify Larry Wolinsky, Esq., and his firm, Jacobowitz and Gubits, LLP ("J&G") as counsel for plaintiff BT Holdings, LLC ("Plaintiff" or "BT Holdings"). (Docket No. 46). Plaintiff opposes the motion and requests sanctions against Defendants for making this "frivolous motion." (Docket No. 55). For the reasons set forth below, Defendants' motion to disqualify is denied without prejudice and Plaintiff's request for sanctions is denied.

## I. BACKGROUND

      This case arises out of an alleged breach of two settlement agreements reached between Plaintiff and Defendants on one side, and third parties on the other side. The relevant facts are as follows.

      Plaintiff is the owner of a piece of property (the "Property") at issue in this litigation. (Complaint[1] ¶ 2). The Village is a municipal corporation of the state of New York, (id. ¶ 3), and the Village Board is the elected legislative and executive body of the Village, (id. ¶ 4). In or

---

[1] Refers to Plaintiff's verified complaint in this action. (Docket No. 1).

around 2004, Plaintiff began investigating the possibility of developing a multi-family residential project ("Project") on the Property. (*Id.* ¶¶ 9-10). At the time, a portion of the Property was located in the Town of Chester ("Town") and a portion was located in the Village. (*Id.* ¶ 9). In January 2008, Plaintiff submitted a petition ("Annexation Petition") to annex the Town portions of the Property into the Village. (*Id.* ¶ 19). The Village Board undertook an environmental review of the Project pursuant to the State Environmental Quality Review Act ("SEQRA"), (*id.* ¶¶ 20, 31), and voted to approve the Annexation Petition, (*id.* ¶ 37). The Town board ("Town Board") undertook its own SEQRA review and voted to deny the Annexation Petition. (*Id.* ¶ 38).

Plaintiff and Defendants then engaged in two related litigations against the Town. On June 15, 2012, Defendants commenced a special proceeding in the Appellate Division (the "Appellate Division Litigation") against the Town and the Town Board, seeking to overturn the Town's denial of the Petition.[2] (Complaint ¶ 39). Plaintiff was granted party status in this proceeding. (*Id.*). Additionally, on July 9, 2012, Plaintiff and Defendants were co-petitioners in an Article 78 proceeding (the "Article 78 Proceeding") against the Town and the Town Board, seeking to annul the Town's SEQRA findings.[3] (*Id.* ¶ 40). After numerous discussions, the parties reached a settlement of the Appellate Division Litigation and the Article 78 Proceeding (together, the "Underlying Litigations") and the parties entered into two stipulations of settlement (the "Settlement Agreements"). (*Id.* ¶ 41).

---

[2] Although the Complaint states that the "Village Board" commenced the Appellate Division Litigation against the "Town Board," (*id.* ¶ 39), the Verified Petition shows that the Village Board *and* the Village commenced the action against the Town Board *and* the Town, (Mary E. Brady Marzolla's Declaration (Docket No. 47) ("Marzolla Decl." Ex. U)). It is undisputed that BT Holdings was later granted party status in the Appellate Division Litigation. (Complaint ¶ 39).

[3] Although the Complaint states that "BT Holdings and the Village Board" commenced the Article 78 Proceeding against the "Town Board," (*id.* ¶ 40), the Verified Petition shows that BT Holdings, the Village Board *and* the Village commenced the action against the Town Board *and* the Town, (Marzolla Decl. Ex. T).

The Settlement Agreements state, in relevant part, that "construction shall be undertaken in the manner described and set forth" in the papers documenting the Village Board's[4] environmental findings (the "Environmental Documents"). (Complaint ¶ 45). Plaintiff alleges that the Environmental Documents expressly include a new RM-N zoning[5] district "as a specific and necessary part of the Project." (*Id.* ¶ 46). The Village of Chester Planning Board, however, ultimately opposed the enactment of RM-N zoning, (*id.* ¶ 50), and the Village Board did not enact any zoning for the Property, (*id.* ¶ 59). Plaintiff alleges that, without any zoning of the Property, it is "unable to use the Property in any manner." (*Id.* ¶ 61). The instant case concerns a dispute over whether the Settlement Agreements require Defendants to pass "RM-N zoning, or any zoning, that would allow construction of the Project . . . as required by the [Settlement Agreements]." (*Id.* ¶¶ 65, 82).

Currently before the Court is Defendants' motion to disqualify J&G as Plaintiff's counsel in the instant case for two reasons. First, Defendants claim that J&G represented both BT Holdings and Defendants in the Article 78 Proceeding and, therefore, J&G must be disqualified from advocating against Defendants in the instant action. (Motion[6] at 14-18). Second, Defendants assert that Mr. Wolinsky is a "necessary witness" as to whether the Settlement

---

[4] Although paragraph 46 of the Complaint references the "Village's SEQRA Findings," it is clear that the Village Board actually issued the Environmental Documents. (*Id.* ¶¶ 26, 31, Ex. B, Ex. C).

[5] The Project could not be constructed pursuant to the Village's existing "RM zoning" scheme unless the Village made changes to that scheme. (*Id.* ¶ 17). Therefore "the Village directed BT Holdings to draft provisions for a new zoning, called RM-N zoning, which would be specific to the Project." (*Id.*). The RM-N zoning law was finalized during the SEQRA process with "substantial input from the Village's independent consultants." (*Id.* ¶ 25). I note that in the Complaint, Plaintiff uses the term "Village" to refer both to the Village alone, (*id.* ¶ 3), and to Defendants collectively, (*id.* ¶ 4). Where, as here, it is unclear if Plaintiff uses the term "Village" to refer to the Village or to Defendants, I will follow the language of the Complaint and use the term "Village."

[6] Refers to Defendants' Memorandum of Law in Support of Motion to Disqualify Plaintiff's Counsel. (Docket No. 49).

3

Agreements incorporated a right to RM-N zoning and, therefore, J&G must be disqualified pursuant to the advocate-witness rule. (Motion at 3, 10-13).

Plaintiff opposes the motion. Plaintiff emphatically disputes the allegation that J&G represented Defendants[7] in the Article 78 Proceeding. (Wolinsky Decl.[8] ¶ 3). Plaintiff maintains instead that Plaintiff and Defendants had a "unity of interest," (*id.* ¶ 7), J&G agreed to take the lead in drafting documents, (*id.* ¶ 8(f)), and Defendants' attorney Ian Schlanger of the law firm Norton & Christensen approved all documents on behalf of Defendants,[9] (*id.* ¶ 16). Furthermore, Plaintiff contends that Mr. Wolinsky is not a necessary witness and that the advocate-witness rule is inapplicable here because "Mr. Wolinsky will not be advocating at trial." (Opp.[10] at 14).

## II. DISCUSSION

### A. Motion to Disqualify on the Grounds of Successive Representation

Federal courts derive their authority to disqualify attorneys "from their inherent power to 'preserve the integrity of the adversary process.'" *Hempstead Video, Inc. v. Inc. Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (citation omitted). In analyzing a motion for disqualification, courts must balance a client's right to choose his counsel freely against "the need to maintain the highest standards of the profession." *Id.* (citations omitted). The Second Circuit views motions to disqualify counsel with disfavor "because they are often interposed for

---

[7] Although Mr. Wolinsky writes only that J&G did not represent the "Village" in the Article 78 Proceeding, (Wolinsky Decl. ¶ 3), it is clear from the context that he means to assert that J&G did not represent the Village *or* the Village Board.

[8] Refers to Declaration of Larry Wolinsky submitted in support of Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Disqualify Plaintiff's Counsel. (Docket No. 52).

[9] Although Mr. Wolinsky writes only that Mr. Schlanger approved all documents on behalf of the "Village," (*id.* ¶ 16), it is clear from the context that he means to assert that Mr. Schlanger approved all documents on behalf of the Village *and* the Village Board.

[10] Refers to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Disqualify Plaintiff's Counsel. (Docket No. 55).

tactical reasons and result in unnecessary delay." *Ello v. Singh*, No. 05-CV-9625 (KMK), 2006 WL 2270871, at *2 (S.D.N.Y. Aug. 7, 2006) (citation omitted). The party moving to disqualify an attorney has "a high standard of proof" and bears "the heavy burden of proving facts required for disqualification." *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791, 794 (2d Cir. 1983) (citations omitted).

Moreover, disqualification is justified "only if 'an attorney's conduct tends to taint the underlying trial.'" *GSI Commerce Solutions, Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 209 (2d Cir. 2010) (citation omitted). A significant risk of trial taint "is encountered when an attorney represents one client in a suit against another client, . . . or might benefit a client in a lawsuit by using confidential information about an adverse party obtained through prior representation of that party." *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981) (citations omitted).

Defendants cite New York Rules of Professional Conduct ("Rules") 1.9(a) and 1.10 in their Motion. Rule 1.9(a) governs successive representation and provides that:

> [a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

N.Y. R. Prof'l Conduct 1.9(a). Rule 1.10(a) provides that "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule 1.7, 1.8 or 1.9, except as otherwise provided therein." N.Y. R. Prof'l Conduct 1.10(a).

Although state disciplinary codes such as the Rules "provide valuable guidance, a violation of those rules may not warrant disqualification," *GSI*, 618 F.3d at 209, since such rules "were not intended to be used as rules governing disqualification motions," *Armstrong v. McAlpin*, 625 F.2d 433, 446 n.26 (2d Cir. 1980) (citation omitted), *vacated on other grounds*,

5

449 U.S. 1106 (1981). *See also Hempstead*, 409 F.3d at 132 ("disqualification is only warranted where 'an attorney's conduct tends to taint the underlying trial,' because other ethical violations can be left to federal and state disciplinary mechanisms") (citation omitted). Second Circuit precedent is the "only truly binding authority on disqualification issues." *HLP Properties, LLC v. Consol. Edison Co. of New York*, No. 14 CIV. 01383 LGS, 2014 WL 5285926, at *3 (S.D.N.Y. Oct. 16, 2014) (citation and internal quotations omitted).

The Second Circuit has held that in cases of successive representation, an attorney may be disqualified if:

> (1) the moving party is a former client of the adverse party's counsel; (2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and (3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client.

*Hempstead*, 409 F.3d at 133 (quoting *Evans*, 715 F.2d at 791). The Second Circuit developed this test from an interpretation of the New York Code of Professional Responsibility ("Code"), *Evans*, 715 F.2d at 791, which New York repealed and replaced with the Rules effective April 1, 2009. Courts have continued to apply the test even after New York adopted the Rules. *See, e.g., Gurniak v. Emilsen*, 995 F. Supp. 2d 262, 270 (S.D.N.Y. 2014); *Employers Ins. Co. of Wausau v. Munich Reinsurance Am., Inc.*, No. 10 CIV. 3558 PKC, 2011 WL 1873123, at *7 (S.D.N.Y. May 16, 2011); *Glacken v. Inc. Vill. of Freeport*, No. CIV.A. 09-4832, 2010 WL 3943527, at *3 (E.D.N.Y. Oct. 6, 2010) (noting that the Rules "incorporate much of the substance of the [Code], and much of the precedent interpreting the [Code] still remains applicable.") (citation omitted).[11]

---

[11] In particular, the ethical standards relating to successive representation are substantially similar in the Rules and the Code. *Compare* Rule 1.9(a) ("A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or substantially related matter in which that person's interests are materially

### i. Attorney-Client Relationship

The threshold question is whether Defendants had an attorney-client relationship with J&G.

> There is no single, well-defined test used to determine whether an attorney-client relationship exists; rather, a court must weigh a number of factors, including among others: (1) whether a fee arrangement was entered into or a fee paid; (2) whether a written contract or retainer agreement exists indicating that the attorney accepted representation; and (3) whether the purported client believes that the attorney was representing him and whether this belief is reasonable.

*Ello*, 2006 WL 2270871, at *3 (citation omitted).

Disqualification may be appropriate even when there is no formal attorney-client relationship. *Glueck*, 653 F.2d at 748-49 ("the issue is not whether [the] relationship . . . is in all respects that of attorney and client, but whether there exist sufficient aspects of an attorney-client relationship 'for purposes of triggering inquiry into the potential conflict involved'") (citation omitted); *Blue Planet Software, Inc. v. Games Int'l, LLC*, 331 F. Supp. 2d 273, 276 (S.D.N.Y. 2004) ("Though the first step of the Second Circuit's test . . . may be read to require a formal attorney-client relationship, ample case law makes clear that an attorney nonetheless may be disqualified despite the lack of a formal attorney-client relationship.").

However, courts generally only find attorney disqualification appropriate in the absence of a formal attorney-client relationship where the attorney had access to the purported client's confidential information and the purported client had a reasonable basis to believe that that information would be kept confidential. *See, e.g., Blue Planet*, 331 F. Supp. 2d at 276 ("In certain circumstances, disqualification may be appropriate when an attorney gains access to the

---

adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.") *with* Code 5-108(A)(1) ("a lawyer who has represented a client in a matter shall not, without consent of the former client after full disclosure . . . [t]hereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client.").

confidences even of someone who is not formally a client."); *Nichols v. Vill. Voice, Inc.*, 417 N.Y.S.2d 415, 418 (N.Y. Sup. Ct. 1979) ("It is clear that where an attorney receives confidential information from a person who, under the circumstances, has a right to believe that the attorney, as an attorney, will respect such confidences, the law will enforce the obligation of confidence irrespective of the absence of a formal attorney-client relationship."). *Cf. Matsumura v. Benihana Nat. Corp.*, 542 F. Supp. 2d 245, 258 (S.D.N.Y. 2008) (An "implied attorney-client relationship may be triggered when a putative client submits 'confidential information to a lawyer with the reasonable belief that the lawyer was acting as his attorney.'") (citation omitted).

Here, it is clear that Defendants did not have a formal attorney-client relationship with J&G in the Article 78 Proceeding. First, Defendants concede that they did not pay any fee to J&G or enter into any fee arrangement, written contract, or retainer agreement with J&G. (Motion at 15; Schlanger Decl.[12] ¶ 10; *see also* Wolinsky Decl. ¶ 13).[13] Second, Defendants did not submit any affidavits from their representatives to show that these individuals believed that J&G represented them in the Article 78 Proceeding. Defendants did submit an email thread dated May 18, 2012, in which the Village mayor, Philip Valastro ("Mayor Valastro") solicits advice from Mr. Schlanger ("Ian, I am wondering if you should send a[n] email out . . . showing we tried to avoid litigation") and then asks Mr. Wolinsky for his opinion ("I would like to hear [Mr. Wolinsky's] thoughts on this, because as of right now we need to work as a unit for the best interest of both the Village and BT Holdings."). (Marzolla Decl.[14] Ex. R). This evidence

---

[12] Refers to Ian L. Schlanger's Declaration submitted in support of Defendants' Motion. (Docket No. 48).

[13] The Village and BT Holdings did enter into an indemnification agreement stating that BT Holdings would pay the Village's attorneys' fees for the Underlying Litigations, (Marzolla Decl. Ex. O), but this agreement did not create any attorney-client relationship between the Village and J&G.

[14] Refers to Mary E. Brady Marzolla's Declaration submitted in support of Defendants' Motion. (Docket No. 47).

8

indicates that Mayor Valastro understood that Mr. Wolinsky and J&G were acting as counsel for BT Holdings and not for Defendants—first he asked for advice from Mr. Schlanger on behalf of the Village, and then he asked for advice from Mr. Wolinsky on behalf of BT Holdings. Further, even if Defendants' representatives had believed that J&G represented Defendants in the Article 78 Proceeding, such a belief would not have been reasonable for several reasons: (i) a village board cannot retain counsel without express authority by statute or local resolution, *Cahn v. Town of Huntington*, 29 N.Y.2d 451, 455 (N.Y. 1972), and Defendants did not have a local law or pass a resolution authorizing them to hire J&G, (Wolinsky Decl. ¶ 5);[15] (ii) Mr. Schlanger—not Mr. Wolinsky—engaged in all communications with the Village Board with respect to the Article 78 Proceeding, (*id.* ¶ 15); and (iii) nearly every paper filed in the Article 78 Proceeding, including the Notice of Petition (dated June 8, 2012), Verified Petition (dated June 8, 2012), Attorney Verification (dated June 8, 2012), Amended Notice of Verified Petition (dated July 6, 2012), Amended Verified Petition (dated July 6, 2012), Reply Affirmation (dated July 11, 2012), and even the Decision And Order filed by the court (dated December 17, 2012), noted that J&G was acting as attorneys for "Petitioner BT Holdings, LLC" only, (Marzolla Decl. Ex. T).[16] Therefore, the Court finds that J&G did not have a formal attorney-client relationship with Defendants in the Article 78 Proceeding.

---

[15] By contrast, the Village Board did pass resolutions hiring Norton & Christensen as attorneys for the Village for the Underlying Litigations and Feerick Lynch MacCartney, PLLC as attorneys for the Village Board for the instant litigation. (Pressler Decl. Exs. H & I).

[16] The RJI (dated June 8, 2012) and Notice of Entry (dated January 28, 2013) both indicate that J&G was acting as attorneys for all petitioners. (Marzolla Decl. Ex. T). However, these two instances appear to have been clerical errors and do not overcome the weight of the evidence indicating that J&G only represented BT Holdings in the Article 78 Proceeding.

It is also clear that J&G did not create a "de facto and/or implied attorney-client relationship with the Defendants" by pursuing the Article 78 Proceeding on behalf of both Plaintiffs and Defendants. (Motion at 17; Reply at 9[17]). Defendants allege that J&G is "in possession of . . . Defendants' opinion and impressions of even public documents and facts." (Motion at 23). However, Defendants do not allege that J&G had access to any specific, confidential information disclosed by Defendants, and Mr. Wolinsky denies that he received any confidential information. (Wolinsky Decl. ¶ 14). Moreover, Defendants did not have a reasonable basis to believe that any confidential information they disclosed to J&G would have been kept secret from their co-petitioner and J&G's long-term client, BT Holdings. *See, e.g.*, *Ello*, 2006 WL 2270871, at *4 (holding that plaintiff failed to establish a previous attorney-client relationship with defendants' counsel where plaintiff "had no reason to believe that his communications with [defendants' counsel] would not be shared and used by [defendants]"); *Trinity Ambulance Serv., Inc. v. G & L Ambulance Servs., Inc.*, 578 F. Supp. 1280, 1285 (D. Conn. 1984) ("The expectation that information conveyed to a co-party's counsel will be held in confidence from that attorney's client is no more plausible than the expectation that an attorney concurrently representing parties in the execution of a joint venture or franchise agreement will keep information relayed to him by one party secret from the other.").

Defendants have failed to prove that a formal attorney-client relationship existed between them and J&G, or that there existed sufficient aspects of an attorney-client relationship to trigger any further inquiry. Moreover, Defendants have failed to show that J&G's continued representation of BT Holdings would tend to taint the underlying trial in this case. Therefore,

---

[17] Refers to Defendants' Reply Memorandum of Law in Further Support of Motion to Disqualify Plaintiff's Counsel. (Docket No. 61).

my analysis ends here. Accordingly, Defendants' motion to disqualify J&G on the grounds of successive representation is denied.

### B. Motion to Disqualify Pursuant to the Advocate-Witness Rule

Defendants also argue that J&G must be disqualified pursuant to the advocate-witness rule because Mr. Wolinsky is a "necessary witness" on the issue of whether the Settlement Agreements incorporated a right to RM-N zoning.

Defendants cite Rule 3.7(a) and Rule 3.7(b) for this proposition. Rule 3.7(a) provides that, with certain exceptions, "[a] lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact." N.Y. R. Prof'l Conduct 3.7(a). An attorney may be disqualified under Rule 3.7(a) only if that attorney actually advocates in front of a jury. *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 179 (2d Cir. 2009); *see also Ramey v. Dist. 141, Int'l Ass'n of Machinists & Aerospace Workers*, 378 F.3d 269, 282 (2d Cir. 2004) ("The advocate-witness rule applies, first and foremost, where the attorney representing the client *before a jury* seeks to serve as a fact witness *in that very proceeding*.") (first emphasis added). Here, Plaintiff maintains that attorney Kelly Pressler will act as lead trial counsel, (Pressler Decl.[18] ¶ 4), and that "Mr. Wolinsky will not be advocating at trial," (*id.* Ex. RR). Therefore, Rule 3.7(a) does not apply.

Rule 3.7(b) provides that:

> [a] lawyer may not act as advocate before a tribunal in a matter if: (1) another lawyer in the lawyer's firm is likely to be called as a witness on a significant issue other than on behalf of the client, and it is apparent that the testimony may be prejudicial to the client; or (2) the lawyer is precluded from doing so by Rule 1.7 or Rule 1.9.

---

[18] Refers to Declaration of Kelly A. Pressler submitted in support of Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Disqualify Plaintiff's Counsel. (Docket No. 51).

N.Y. R. Prof'l Conduct 3.7(b).

Disqualification by imputation under Rule 3.7(b) is an "extreme remedy" and should be ordered "sparingly." *Murray*, 583 F.3d at 178, 179. The Second Circuit has held that "a law firm can be disqualified [under Rule 3.7(b)] only if the movant proves by *clear and convincing* evidence that [A] the witness will provide testimony prejudicial to the client, and [B] the integrity of the judicial system will suffer as a result." *Id.* at 178-179 (emphasis added). "Prejudicial" testimony is that which "is 'sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony.'" *Id.* at 178 (citation omitted). A party moving to disqualify an attorney pursuant to Rule 3.7 "bears the burden of demonstrating specifically how and as to what issues in the case the prejudice may occur and that the likelihood of prejudice occurring [to the witness-advocate's client] is substantial." *Id.* (alteration in original) (citation and internal quotations omitted).

Here, Defendants argue that Mr. Wolinsky's testimony may prejudice his client, BT Holdings, by demonstrating that Plaintiff and Defendants did not have a meeting of the minds on whether the Settlement Agreements incorporated a right to RM-N zoning. (Motion at 12; Reply at 3). Defendants claim that the Settlement Agreements resolved the issue of annexation but did not "resolve any zoning issues," (Schlanger Decl. ¶ 17) and that Mr. Wolinsky may have known as much. Mr. Wolinsky's draft of one of the Settlement Agreements explicitly referred to "the zoning scheme described and set forth" in the Environmental Documents. (Marzolla Decl. Ex. S). Mr. Schlanger deleted this language and wrote in an April 11, 2013 email to Mr. Wolinsky that "[t]he reason I keep striking the mention of the zoning is that it has not been adopted." (*Id.*). In response, Plaintiff argues that "[n]o interpretation [of the Settlement Agreements] is required"

12

and that Defendants breached the Settlement Agreements simply by failing to adopt any zoning scheme that would allow Plaintiff to develop the Project. (Wolinsky Decl. ¶ 26).

Some portion of Mr. Wolinsky's testimony could arguably be detrimental to Plaintiff's position. However, any testimony that Mr. Wolinsky knew that Mr. Schlanger struck zoning language from the Settlement Agreements is not likely to cause substantial prejudice to Plaintiff. The Settlement Agreements state that "construction shall be undertaken in the manner described and set forth" in the Environmental Documents, and the Environmental Documents refer to RM-N zoning as "a new zoning district ***to be adopted post-annexation***." (Complaint ¶ 33) (emphasis in original). Moreover, "[t]he central theme of Plaintiff's case is that because Defendants have failed to enact *any* zoning at all on Plaintiffs property, Plaintiff is unable to construct in accordance with the [Environmental Documents]." (Opp. at 5-6) (emphasis in original). At trial, Plaintiff will likely focus on Defendants' failure to enact any zoning at all. Therefore, Mr. Wolinsky's proposed testimony regarding the language of the Settlement Agreements is not "sufficiently adverse" to Plaintiff's arguments such that it would warrant disqualification of his entire firm. *Murray*, 583 F.3d at 178 (citation omitted).

"[D]isqualification by imputation should be ordered sparingly, . . . and only when the concerns motivating the rule are at their most acute." *Murray*, 583 F.3d at 178. Defendants "have failed to establish the clear and convincing evidence of prejudice necessary to justify the extreme remedy of disqualification" under Rule 3.7, and they have failed to convince the Court that "the integrity of the judicial system [would] suffer as a result" of Mr. Wolinsky's testimony.

13

*Id.* at 179. Therefore, Defendants' motion to disqualify J&G pursuant to the advocate-witness rule is denied without prejudice.[19]

## III. CONCLUSION

I have considered Defendants' other arguments and find them to be without merit. For the foregoing reasons, Defendants' motion to disqualify Plaintiff's counsel is denied without prejudice. Plaintiff's request for sanctions is denied. The Clerk is respectfully requested to terminate the pending motion (Docket No. 46).

Dated: December 14, 2015
      White Plains, New York

**SO ORDERED:**

_____
JUDITH C. McCARTHY
United States Magistrate Judge

---

[19] If the evidence develops differently as the case progresses, and it is clear that Mr. Wolinsky's proposed testimony will cause substantial prejudice to BT Holdings, Defendants may seek leave to file a new motion to disqualify Plaintiff's counsel.