UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BT HOLDINGS, LLC,

          Plaintiff,

  - against -

VILLAGE OF CHESTER and VILLAGE OF CHESTER
BOARD OF TRUSTEES,

          Defendants.

15-CV-1986 (CS)

**OPINION & ORDER**

---

Appearances:

Kelly A. Pressler
Jacobowitz and Gubits, LLP
Walden, New York
*Counsel for Plaintiff*

Dennis E. A. Lynch
Feerick Lynch MacCartney
South Nyack, New York
*Counsel for Defendants*

Seibel, J.

  Before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint. (Doc. 19.) Defendants move to dismiss both on ripeness grounds pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6). Because Plaintiff's claims are not yet ripe, there is no subject matter jurisdiction, and Defendants' Motion to Dismiss is GRANTED. Plaintiff's state law claims are hereby remanded to the New York Supreme Court.

1

**I.     Background**

    A.  Facts

For purposes of this Motion, the Court accepts as true the facts (but not the conclusions) alleged by Plaintiff in the Complaint ("Compl."). (Doc. 1 at 5-74.)

Plaintiff BT Holdings, LLC is a Delaware corporation that owns approximately 68.4 acres of property (the "Property") in the Village of Chester, New York (the "Village"). (*Id.* at 6.) At the time of purchase, most of the Property fell within the Town of Chester (the "Town"), but some fell within the Village. (*Id.*) In or about 2004, Plaintiff began considering the possibility of developing the Property, and in that process consulted with municipal leaders from the Town and the Village, including those from the Village of Chester Board of Trustees (the "Village Board"). (*Id.* at 7.) Over the next few years, the Village "took a very active role in the planning and development" of the project. (*Id.*) As part of the Village's involvement, it requested that Plaintiff petition to annex into the Village the portions of the Property that were in the Town. (*Id.* at 8.) In response, Plaintiff noted that if the annexation were completed, then the project could not be constructed pursuant to the Village's multi-residential zoning district, or "RM zoning," without variances or zoning text amendments. (*Id.*) As a result, the Village asked Plaintiff to draft a new zoning provision, called "Residential Multifamily-Neighborhood," or "RM-N," zoning, which would be specific to this project. (*Id.*)

In January 2008, Plaintiff petitioned for annexation of the Town part of the Property into the Village, (*id.*), which required an environmental review of the proposed petition under the State Environmental Quality Review Act ("SEQRA"), (*id.* at 8-9). The SEQRA process also included an examination of the RM-N zoning proposal. (*Id.* at 9.) This review took approximately four years, during which time Plaintiff, the Village and the Town continued to

revise the project. (*Id.*) On August 18, 2011, the Village Board issued a Final Environmental Impact Statement ("FEIS"), which articulated why the proposed project would benefit the neighborhood and why the adoption of RM-N zoning would further this purpose. (*Id.* at 9-10.) A few months later, in December 2011, the Village Board issued a SEQRA Findings Statement. (Pressler Affirm. Ex. B.)[1] The Findings Statement described the project and considered its potential impact, noting that the project was "proposed to be zoned RM-N . . . a new zoning district to be adopted post-annexation." (*Id.* at 2.) This new designation was also proposed to apply to the Town property to be annexed, which at that time was zoned "Suburban-Residential," or "SR-6." (*Id.* at 9.) While the Village Board voted to approve the annexation, planned development, and RM-N zoning proposal, the Town Board issued its own SEQRA findings and voted to deny the petition. (Compl. at 11.)

Plaintiff and the Village Board commenced, as co-petitioners, an Article 78 proceeding in the New York Supreme Court against the Town, seeking to annul the Town's SEQRA findings. (*Id.*)[2] Ultimately, in a settlement among the three parties, Plaintiff agreed to reduce residential development to "a maximum of 340 residential units, with no less than 100 of those units to be age-restricted," and it was further agreed that "[c]onstruction shall be undertaken in the manner described and set forth in the [FEIS] and the Village's SEQRA findings . . . subject to review and approval by the Village [Board] during the planning process," (*id.* at 12; Pressler Affirm. Ex. C, at 3). The settlement stipulation further stated that development of the project site would move forward upon Plaintiff's "receipt of final, unconditional and unappealable approvals for its

---

[1] "Pressler Affirm." refers to Affirmation of Kelly A. Pressler, Esq. in Opposition to Defendants' Motion to Dismiss. (Doc. 25.) As discussed below, the Court may consider the Affirmation and all attached exhibits.

[2] The Village Board also commenced its own special proceeding against the Town in New York state court in order to contest the Town's denial of the petition. (Compl. at 11.) Plaintiff was granted party status in this proceeding. (*Id.*)

3

proposed project."  (Pressler Affirm. Ex. C, at 3.)  The Town also agreed to approve annexation.  (*Id.* at 5.)  At this point, according to the complaint, Plaintiff and Defendants continued to share a desired vision for the development.  (Compl. at 12-14.)

Pursuant to the settlement, the Village Board began processing the RM-N zoning designation and provided the proposal to the Village of Chester Planning Board (the "Planning Board")[3] for review and comment.  (*Id.* at 12.)  The Planning Board, however, issued a report opposing RM-N zoning and suggested that the project "could be built as planned under the existing RM multi-residential zoning."  (*Id.*)  Plaintiff alleges that it attempted to develop a compromise with the Planning Board and the Village Board in order to proceed with the project as planned, but according to Plaintiff "none of the zoning amendments proposed by the Planning Board" would have allowed the project to proceed in accordance with the FEIS and the SEQRA findings, as required by the settlement.  (*Id.* at 13.)  At Plaintiff's request, on November 3, 2014, the Village Board held a hearing and voted on three proposed amendments to the existing RM zoning, none of which were the RM-N zoning and all of which were voted down.  (*Id.*)  Plaintiff asserts that because the Village Board did not affirmatively enact any zoning, the Property was left with "no zoning at all," (*id.*), and that Plaintiff is thus "unable to use the Property in any manner," (*id.* at 14).

B.  Procedural History

Plaintiff filed its complaint against Defendants in the New York Supreme Court on March 3, 2015, (Doc. 1 at 5-74), alleging a series of breach of contract claims under state law as well as a claim under 42 U.S.C. § 1983 alleging an unconstitutional taking in violation of the

---

[3] Pursuant to Village regulations, the Planning Board is vested with the authority to prepare master plans and reports and recommendations in connection with Village initiatives, and to report on matters referred to it by the Village Board.  The Planning Board is also authorized to approve site plans.  *See* Vill. of Chester, N.Y., Code § 17-1(A), (D).

Fifth and Fourteenth Amendments.  Defendants removed to this Court on March 17, 2015, (Doc. 1), and on June 26, 2015 moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Doc. 19.)

## II.     Legal Standards

"Subject matter jurisdiction is a threshold issue."  *Corsello v. Verizon N.Y., Inc.*, 976 F. Supp. 2d 354, 358 (E.D.N.Y. 2013), *aff'd sub nom. Kurtz v. Verizon N.Y., Inc.*, 758 F.3d 506 (2d Cir. 2014).  Where, as here, a party seeks dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), "the court must consider the Rule 12(b)(1) motion first."  *Witt v. Vill. of Mamaroneck*, 992 F. Supp. 2d 350, 357 (S.D.N.Y. 2014); *see Goldfine v. Kelly*, 80 F. Supp. 2d 153, 158 (S.D.N.Y. 2000) (before considering whether plaintiff adequately alleged unconstitutional taking, court was first required to determine whether claim was ripe for adjudication).  "When jurisdiction is challenged, the plaintiff bears the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists, and the district court may examine evidence outside of the pleadings to make this determination."  *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008) (citations and internal quotation marks omitted), *rev'd en banc on other grounds*, 585 F.3d 559 (2d Cir. 2009).  "[T]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it."  *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (alteration in original) (citations and internal quotation marks omitted), *aff'd on other grounds*, 561 U.S. 247 (2010).

"[R]ipeness is a jurisdictional issue . . . properly considered under Rule 12(b)(1)."  *Witt*, 992 F. Supp. 2d at 356.  If the case is not ripe for review, subject matter jurisdiction does not

exist and the case must be dismissed.  *See United States v. Fell*, 360 F.3d 135, 139 (2d Cir. 2004) ("Ripeness is a constitutional prerequisite to exercise of jurisdiction by federal courts.") (internal quotation marks omitted).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) based on lack of jurisdiction allows a court to consider evidence and materials outside of the pleadings.  *See LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999); *Liberty Cable Co. v. City of N.Y.*, 893 F. Supp. 191, 199 n.11 (S.D.N.Y.) (collecting cases), *aff'd*, 60 F.3d 961 (2d Cir. 1995).  Both parties have submitted sworn declarations and affidavits, attaching several documents thereto, and neither party disputed the authenticity of any of these attachments nor asserted that there were any that the Court should not consider.  Therefore, and as noted above, because the threshold inquiry is a jurisdictional one, the Court may consider these documents in its analysis.[4]

### III.  Discussion

#### A. Ripeness

Defendants argue that Plaintiff's federal takings claim is not ripe for adjudication. (Defendants' Mem. 1.)  Ripeness is a jurisdictional inquiry, *see, e.g.*, *Island Park, LLC v. CSX Transp.,* 559 F.3d 96, 110 (2d Cir. 2009), and accordingly the Court "must presume that [it] cannot entertain [Plaintiff's] claims unless the contrary appears affirmatively from the record," *Murphy v. New Milford Zoning Comm'n,* 402 F.3d 342, 347 (2d Cir. 2005) (internal quotation marks omitted).  The concept of ripeness is "rooted in Article III's case or controversy requirement and the prudential limitations on the exercise of judicial authority."  *S&R Dev.*

---

[4] Defendants refer to the "no set of facts" standard originating in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). (Memorandum of Law of Defendants Village of Chester and Village of Chester Board of Trustees in Support of Motion to Dismiss, ("Defendants' Mem."), (Doc. 21), at 3.)  While the reference is not relevant because, as Defendants acknowledge, it does not apply to jurisdictional challenges anyway, the Court feels compelled to point out that the U.S. Supreme Court in 2007 ruled that that standard had "earned its retirement" and "is best forgotten." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007).  Counsel should not be citing it almost nine years later.

*Estates, LLC v. Bass*, 588 F. Supp. 2d 452, 460 (S.D.N.Y. 2008).  The ripeness doctrine "ensure[s] that a dispute has generated injury significant enough to satisfy the case or controversy requirement of Article III of the U.S. Constitution." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90 (2d Cir. 2002).  It also prevents courts from "entangling [themselves] in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur, depending on the final administrative resolution." *Id*.  The ripeness requirement defers federal review of claims until they have "arisen in a more concrete and final form." *Murphy*, 402 F.3d at 347.

In *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), the Supreme Court created a two-pronged ripeness test for the Fifth Amendment takings context:  (1) the government entity must have rendered a "final decision" on the matter; and (2) the plaintiff must have "sought just compensation by means of an available state procedure." *Dougherty*, 282 F.3d at 88 (citing *Williamson Cty.*, 473 U.S. at 186, 194-95).  Only when both elements are satisfied is a takings claim considered ripe for the court's review. *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 734 (1997).  Because the Second Circuit has held that the second prong of *Williamson County* is satisfied "when a defendant removes a takings claim from state court to federal court," *Sherman v. Town of Chester*, 752 F.3d 554, 564 (2d Cir. 2014), I will focus on whether the Village rendered a "final decision" in this case.

The final decision requirement ensures that when analyzing a challenge to the constitutionality of a local land use decision, a federal court has "the benefit of a fully developed record, a precise demonstration of how local regulations would be applied to the particular property, and knowledge of whether a variance or approval of alternative plans could provide the relief the landowner seeks." *Lawson v. E. Hampton Planning & Zoning Comm'n*, No. 07-CV-

7

1270, 2008 WL 4371297, at *3 (D. Conn. Sept. 22, 2008); *accord Lost Trail LLC v. Town of Weston*, 289 F. App'x 443, 445 (2d Cir. 2008) (summary order).  Until a final decision is rendered, "it is impossible to tell whether the land retain[s] any reasonable beneficial use." *Williamson Cty.*, 473 U.S. at 189 n.11.

"A final decision is 'a definitive position on the issue that inflicts an actual, concrete injury.'"  *R-Goshen LLC v. Vill. of Goshen*, 289 F. Supp. 2d 441, 448 (S.D.N.Y. 2003) (quoting *Williamson Cty.*, 473 U.S. at 193), *aff'd*, 115 F. App'x 465 (2d Cir. 2004) (summary order).  In the land use development context, a final decision requires that "a development plan must be submitted, considered and rejected by the governmental entity.  Even when the plaintiff applies for approval of a subdivision plan and is rejected, a claim is not ripe until plaintiff also seeks variances that would allow it to develop the property."  *Country View Estates @ Ridge LLC v. Town of Brookhaven*, 452 F. Supp. 2d 142, 149 (E.D.N.Y. 2006) (internal quotation marks omitted).

It is clear from the record that Plaintiff has not yet received a final decision on its application because, as Defendants note and as Plaintiff does not contest, it has not yet submitted an application to the Planning Board.  (Defendants' Mem. 5.)  Therefore, Plaintiff's due process claim is not ripe for adjudication.  The Village's Zoning Law includes the following instructions:

> **§ 98-28. Application procedure.**
>
> A.  Prior to the submission of an application for site plan approval to the Planning Board, the applicant shall arrange a meeting with the Planning Board to discuss in general terms the proposals to be made and to elicit from the Planning Board the applicable requirements of site plan approval concerning the application to be submitted.
>
> B.  Applications for site plan approval for permitted uses shall be submitted to the Planning Board . . . .

. . .

(*See* Pressler Affirm. Ex. D.)  Given that in 2013 the Planning Board considered and opposed the enactment of RM-N zoning for the Property, (Compl. at 12), it was in all likelihood generally familiar with what Plaintiff would have proposed to construct.  But this in no way eliminated Plaintiff's obligation to submit a formal application for site plan approval.[5]  An opinion issued regarding the zoning classification for a given property is not a substitute for a final decision rendered as to a development plan.  *See S&R Dev. Estates*, 588 F. Supp. 2d at 462; *see also Celentano v. City of W. Haven*, 815 F. Supp. 561, 569 (D. Conn. 1993) ("An unsuccessful effort to negotiate an informal resolution of a zoning dispute with a local agency, however, does not, by itself, constitute final government action.").  Indeed, the Planning Board apparently believed the project could be built under the existing zoning.  (Compl. at 12.)

Plaintiff asserts that without any zoning for the newly annexed portion of the Property, it cannot demonstrate that its proposal conforms to the applicable zoning regulations, and it thereby is "precluded from submitting applications for any use or occupancy."  (Plaintiff's Opp. Mem. 8, 11;[6] *see* Compl. at 13.)  But aside from the fact that the Planning Board seems to disagree, Plaintiff could have "elicit[ed] from the Planning Board the applicable requirements of site plan approval."  (Pressler Affirm. Ex. D, at § 98-28(A).)  Through this process, the Planning Board could have informed Plaintiff as to the zoning regulations to which it should adhere – and if the Planning Board had refused, this would have only strengthened Plaintiff's claim in this case.

---

[5] Nor can Plaintiff plausibly suggest that the Planning Board's role in approving development was displaced by the prior settlement between the Town, the Village and Plaintiff, given that the Planning Board, per the Village's Zoning Law, remains the initial authority for site plan approvals, (*see* Pressler Affirm. Ex. D, at § 98-28(A)-(B)), and the settlement makes clear that the Planning Board's "review and approval" was still required, (*id.* Ex. C, at 3). In other words, the stipulation did not direct Plaintiff to begin building according to the specifications that were previously laid out, but instead directed Plaintiff to begin an *application* to build in accordance with those specifications.

[6] "Plaintiff's Opp. Mem." refers to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss.  (Doc. 24.)

9

Plaintiff's argument is further unpersuasive because Section 98-8(A) of the Village's zoning law, (*see* Pressler Affirm. Ex. D), on which Plaintiff relies, prohibits the "use[] . . . occup[ation] . . . or erect[ion]" of any building, structure or land except in conformance with local regulations, but does not prevent a party from *applying* to use, occupy or erect a building in accordance with zoning that it is concurrently proposing. Indeed, in its annexation petition, for example, Plaintiff's plans were laid out and analyzed in extensive detail, (*see id.* Ex. B), even though the proposed development would require zoning that did not govern the Property at the time.

Without a final decision from the Planning Board on Plaintiff's application, "the Court's assessment of plaintiff's injury caused by defendants' alleged constitutional violations is speculative for Article III purposes." *Country View Estates*, 452 F. Supp. 2d at 150; *see Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 915 F. Supp. 2d 574, 599 (S.D.N.Y. 2013) ("[Plaintiffs'] failure . . . to file (or their decision not to file) any formal application for use of the [property] leaves [plaintiffs] outside the boundaries of the final decision rule."); *Kittay v. Giuliani*, 112 F. Supp. 2d 342, 349 (S.D.N.Y. 2000) (declining to invoke jurisdiction where plaintiff "failed to obtain a final – or, for that matter, any – decision" concerning its property), *aff'd*, 252 F.3d 645 (2d Cir. 2001) (*per curiam*). Plaintiff may raise legitimate complaints regarding Defendants' conduct, but nonetheless the law is clear that "[b]efore commencing [a takings] suit, a land developer must obtain . . . a definitive position as to how it can use the property from the entity charged with implementing the zoning regulations." *S&R Dev. Estates*, 588 F. Supp. 2d at 460. No such closure is evident here.

Despite the absence of a formal site plan application, Plaintiff submits that its annexation petition filed in January 2008, (Compl. at 8), constituted a land use application for purposes of the *Williamson County* analysis. (Plaintiff's Opp. Mem. 6.) Plaintiff cites no authority, and the

10

Court has found none, in support of the proposition that a request for annexation can replace the need to submit a development proposal. This is likely because an annexation petition seeks only to "alter[] . . . the boundaries of a county, city, town or village," N.Y. GEN. MUN. LAW § 701, and does not dictate how that land will necessarily be used. Moreover, the Village voted in Plaintiff's favor on the annexation petition, (Compl. at 11), so that cannot be the action Plaintiff wishes to challenge.

Furthermore, even had Plaintiff submitted a development plan that the Planning Board subsequently rejected, or even if the annexation petition was understood to be a viable substitute, there is no evidence that Plaintiff requested any variance or land use approvals from the Zoning Board of Appeals ("ZBA").[7] Even where the initial municipal authority has rejected a developer's proposal, courts within this Circuit have held that the developer must submit the plan to the relevant governing authority for a determination as to whether a variance is appropriate. *See S&R Dev. Estates*, 588 F. Supp. 2d at 462; *see also Adrian v. Town of Yorktown*, 341 F. App'x 699, 700 (2d Cir. 2009) (plaintiffs did not submit revised application, seek variance or present credible evidence that amended applications or variance requests would be futile); *Murphy*, 402 F.3d at 352 (recognizing that appeal to ZBA may have identified available

---

[7] The Village's Zoning Law includes the following provisions regarding applications to the ZBA for a variance:

**§ 98-37.  Powers and duties.**

. . .

B.  Variances.

(1)  The Board of Appeals shall have the power to vary or modify the application of any of the regulations or provisions of this chapter upon appeal in specific cases.

(2)  Use Variances.

(a)  The Board of Appeals, on appeal from the decision or determination of the administrative officer charged with the enforcement of the Zoning Law, shall have the power to grant use variances, as defined herein.

. . .

(Pressler Affirm. Ex. D.)

11

alternatives, and "[b]ypassing the [ZBA] and its hearing processes, which were statutorily designed for exploration and development of these sorts of issues, [left plaintiffs'] alleged injuries ill-defined"); *Southview Assocs., Ltd. v. Bongartz*, 980 F.2d 84, 98 (2d Cir. 1992) (plaintiff did not obtain final decision because although first application for permit was denied, plaintiff was not precluded from submitting another proposal to board); *Kittay*, 112 F. Supp. 2d at 349 (plaintiff failed to seek approval or variance and therefore failed to satisfy final decision requirement); *Marathon Outdoor, LLC v. Vesconti*, 107 F. Supp. 2d 355, 362 (S.D.N.Y. 2000) (final decision requirement lacking because plaintiff failed to seek variance or waiver from applicable authority); *Goldfine*, 80 F. Supp. 2d at 159 ("Even where the plaintiff applies for approval of a subdivision plan and is rejected, a claim is not ripe until the plaintiff also seeks variances that would allow it to develop the property."); *Xikis v. City of N.Y.*, No. 89-CV-2000, 1990 WL 156155, at *5 (E.D.N.Y. Sept. 28, 1990) ("Having not applied for a variance, plaintiff cannot now say he has been denied 'all use' of his property."). Moreover, Plaintiff has not alleged that the ZBA either lacks discretion to grant the relief sought or that the ZBA has made clear that applications for relief will be denied. *See Lost Trail LLC*, 289 F. App'x at 445. Accordingly, Plaintiff has failed to satisfy the first prong under *Williamson County*.

    B. Futility

Alternatively, Plaintiff contends that its failure to obtain a final decision from Defendants should be excused under the futility exception. (Plaintiff's Opp. Mem. 9.) A property owner will be excused from obtaining a final decision only "'if pursuing an appeal to a zoning board of appeals or seeking a variance would be futile. That is, a property owner need not pursue such applications when a zoning agency lacks discretion to grant variances or has dug in its heels and made clear that all such applications will be denied.'" *Sherman*, 752 F.3d at 561 (quoting

*Murphy*, 402 F.3d at 349). To demonstrate futility, a plaintiff must show (1) the inevitability of refusal of its application and (2) that it has already filed at least one meaningful application. *Leonard v. Planning Bd.*, No. 13-CV-6034, 2016 WL 67791, at *4 (S.D.N.Y. Jan. 4, 2016). It is well established that the standard for finding futility is high. *See Sherman*, 752 F.3d at 563 ("But when the government's actions are so unreasonable, duplicative, or unjust as to make the conduct farcical, the high standard is met."). In *Sherman*, this Circuit articulated a series of actions by the town – each seemingly more onerous than the last – that cumulatively amounted to a sufficient showing that pursuing a final decision would be futile:

> The [t]own will likely never put up a brick wall in between Sherman and the finish line. Rather, the finish line will always be moved just one step away until Sherman collapses. In essence, the [t]own engaged in a war of attrition with Sherman. Over ten years, Sherman was forced to spend over $5.5 million on top of the original $2.7 million purchase. As a result, he became financially exhausted to the point of facing foreclosure and possible personal bankruptcy. Moreover, at no point could Sherman force the [t]own to simply give a final "yay or nay" to his proposal. When asked at argument, the [t]own's counsel could not name one way Sherman could have appealed any aspect of the [t]own decade of maneuvers in order to obtain a final decision.

*Id.* The extreme circumstances in *Sherman* illustrate the extent of the showing that is required before a plaintiff can meet this narrow exception.[8]

Plaintiff has failed to show that Defendants have "dug in [their] heels and made clear that all . . . applications will be denied." *Murphy*, 402 F.3d at 349. First, as discussed above, Plaintiff has not filed a "meaningful application," *Leonard*, 2016 WL 67791, at *4, with either

---

[8] Indeed, this Circuit in *Sherman* recounted a series of tactics employed by the town that does not approach that seen here:

> For years, every time Sherman submitted or was about to submit a proposal . . . the [t]own changed its zoning regulations, sending Sherman back to the drawing board. It retroactively issued a six month moratorium on development that appears to have applied only to Sherman's property. That six month moratorium was extended for another year until after Sherman sued the [t]own. Town officials also repeatedly asked Sherman to resubmit studies and plans that had already been approved.

752 F.3d at 562.

the Planning Board or the ZBA. Second, there is no indication that denial of Plaintiff's application would be inevitable, especially in light of the fact that from 2005 to 2013, as Plaintiff attests, the Village and Plaintiff worked hand-in-hand to further the project. (Compl. at 8, 11-14.) In fact, Defendants note that a Village Resolution passed on May 20, 2015, (*see* Lynch Decl. Ex. C),[9] evidences Plaintiff's current "right to build up to 120 single-family detached dwelling units" on the Property. (*Id.* at 3.)[10] The parties' extensive history of prior cooperation, standing alone, would suffice to support the possibility of Plaintiff being permitted to move forward with the development, but the Resolution reinforces this finding. Plaintiff asserts that the Resolution "expresses nothing more than an intent to zone the property at an indefinite time in the future," (Plaintiff's Opp. Mem. 1), but it is not Defendants' burden at this stage to show anything more. In fact, Plaintiff's statement only further suggests that the Village may still maintain a desire to assist Plaintiff in developing the property.

Plaintiff's veiled allegations of hostility and bad faith by the Village similarly fail to excuse its failure to obtain a final decision. (*See* Compl. at 13-14; Plaintiff's Opp. Mem. 9, 13.) Evidence of hostility by local officials is not alone enough to satisfy the futility exception, *see, e.g.*, *S&R Dev. Estates*, 588 F. Supp. 2d at 463 ("Futility does not exist merely because of hostility to the developer's plans."), especially where a plaintiff fails to connect that evidence to the ZBA, "the body charged with deciding [variance] application[s]," *Kowalczyk v. Barbarite*, 594 F. App'x 690, 693 (2d Cir. 2014) (summary order); *see S&R Dev. Estates*, 588 F. Supp. 2d at 463 ("Although [plaintiff] has faced opposition to its development plan from [t]own officials

---

[9] "Lynch Decl." refers to Declaration of Dennis E.A. Lynch in Support of Defendants' Motion to Dismiss. (Doc. 20.)

[10] Plaintiff asserts that the Resolution carries "no force or effect," (Plaintiff's Opp. Mem. 11), because the Village Board can formally enact zoning on the Property only by passing a local law, (*see* Pressler Affirm. Ex. D at § 98-39). I need not determine the legal effect of the Resolution, because I consider it only insofar as it suggests that denial of Plaintiff's application would not be inevitable and that cooperation between the parties remains a possibility.

14

and influential [t]own groups, it has not shown that the prospect of refusal from the ZBA would be certain."); *Goldfine*, 80 F. Supp. 2d at 160-61 (allegations of open hostility by or conspiracy among defendants insufficient to show that refusal was certain); *Tri-State Video Corp. v. Town of Stephentown*, No. 97-CV-965, 1998 WL 72331, at *4 (N.D.N.Y. Feb. 13, 1998) (futility exception not met even where plaintiff alleged that town officials were "openly hostile" to proposal). Nor does the fact that the Village Board appoints the five ZBA members, (*see* Pressler Affirm. Ex. D, at § 98-35), impute any alleged bias to the ZBA. *See S&R Dev. Estates*, 588 F. Supp. 2d at 463. Because there is no indication that Defendants have used "repetitive and unfair procedures" or "engaged in a war of attrition" against Plaintiff to avoid issuing a final decision, *545 Halsey Lane Props., LLC v. Town of Southampton*, No. 14-CV-800, 2015 WL 3824050, at *4 (E.D.N.Y. June 19, 2015), the Court declines to invoke the futility exception required for Plaintiff's claim to be deemed ripe for adjudication.

    C.  State Law Claims

Having determined that the only claim over which this Court has original jurisdiction should be dismissed, I decline to exercise supplemental jurisdiction over Plaintiff's remaining state-law causes of action. *See* 28 U.S.C. § 1367(c)(3) ("[D]istrict courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (federal courts should decline exercise of jurisdiction where federal law claims have dropped out at early stages of lawsuit and only state law claims remain); *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (confirming discretionary nature of supplemental jurisdiction). "[W]here the Court declines to exercise supplemental jurisdiction, it has discretion to remand the case back to state court." *City of New Rochelle v. Town of Mamaroneck*, 111 F. Supp. 2d 353,

370 (S.D.N.Y. 2000).  Pursuant to 28 U.S.C. § 1367(c)(3), I remand all of Plaintiff's state law claims to the New York Supreme Court for adjudication.

### III.     Conclusion

For the reasons stated above, Defendants' Motion to Dismiss the Complaint is GRANTED, and Plaintiff's state law claims are hereby remanded to the New York Supreme Court.  The Clerk of Court is respectfully directed to terminate the pending motion, (Doc. 19), and close the case.

**SO ORDERED.**

Dated: February 23, 2016
       White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.